## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| ROCKET MORTGAGE, LLC s/b/m NATIONSTAR MORTGAGE LLC, | Civil Action No. 2:26-cv-1955 |
| Plaintiff, | |
| vs. | |
| SUZANNE MAGILL, NORMAN MAGILL, and PRESTIGE CLAIM CONSULTANTS CORP., | |
| Defendants. | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Rocket Mortgage, LLC s/b/m Nationstar Mortgage LLC ("Rocket"), by and through undersigned counsel, files its complaint against Defendants, Norman Magill, Suzanne Magill, and Prestige Claim Consultants Corp., and alleges as follows in support of this action for damages and injunctive relief:

## PARTIES

1.     Plaintiff Rocket Mortgage, LLC ("Rocket") is successor by merger to Nationstar Mortgage LLC (d/b/a Mr. Cooper) ("Nationstar") effective February 2, 2026. Rocket is a Michigan limited liability company with its principal place of business in Wayne County, Michigan, and is authorized to do business in the State of Florida.

328512391v1

2. Upon information and belief, Defendants Norman Magill and Suzanne Magill (the "Borrowers") are individuals currently residing in Montgomery County, Ohio. Prior to Hurricane Ian, the Borrowers resided in Charlotte County, Florida, at the property described below in paragraph eight and are the borrowers and mortgagors under the note and mortgage associated with that property.

3. Defendant Prestige Claim Consultants Corp. ("Prestige") is a Florida corporation with its principal place of business in Miami-Dade County, Florida, and is authorized to do business in the State of Florida.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Rocket is a Michigan limited liability company wholly owned by Rocket Limited Partnership, a Michigan limited partnership. Rocket Limited Partnership is owned by Rocket GP, LLC, a Michigan limited liability company and Rocket LP, LLC, a Michigan limited liability company. Rocket Companies, Inc., a Delaware corporation, is the sole member of Rocket GP, LLC and of Rocket LP, LLC.

328512391v1

6.     The Borrowers are citizens of Ohio and Prestige is a citizen of Florida. Accordingly, complete diversity of citizenship exists between Plaintiff and Defendants within the meaning of 28 U.S.C. § 1332.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and the real property that is the subject of this action is located within this District.

## FACTUAL BACKGROUND

### LOAN ORIGINATION

8.     On or about March 11, 2022, the Borrowers executed a promissory note in the original principal amount of $191,900.00 in favor of Home Point Financial Corporation ("Home Point") on March 11, 2022. [*See* Note, **EXHIBIT A**].

9.     The indebtedness evidenced by the note was secured by a mortgage also dated March 11, 2022, and recorded on March 14, 2022, as Instrument No. 3072470 in the Charlotte County Clerk of Circuit Court and encumbering real property located at 4321 Worchester Dr., Punta Gorda, Florida 33982 ("Property"). [*See* Mortgage, **EXHIBIT B**] [1].

10.    The note and mortgage are collectively known as the "Loan."

---

[1] The mortgage is recorded in the Official Records of Charlotte County, Florida at Book 4944, Page 1783.

11.    On April 2, 2024, Rocket, as successor in interest, was assigned the mortgage by Mortgage Electronic Registration Systems, Inc ("MERS"), as nominee for Home Point. [*See* Assignment of Mortgage, **EXHIBIT C**][2].

## FORECLOSURE

12.    The Borrowers defaulted on the Loan, and the Loan is currently due for the January 1, 2024 payment and all subsequent payments.

13.    Because of the default, Rocket's predecessor filed a complaint for foreclosure against the Borrowers on September 6, 2024.[3]

14.    On August 8, 2025, the trial court entered a final judgment of foreclosure, which set the property for sale on September 25, 2025. [*See* Final Judgment, **EXHIBIT D**].

15.    However, as a result of the issues pending in this action, the foreclosure sale was cancelled.

## HURRICANE IAN INSURANCE CLAIM

16.    On September 28, 2022, Hurricane Ian made landfall in Florida and caused substantial damage to the Property.

---

[2] The assignment is recorded in the Official Records of Charlotte County, Florida as Instrument No. 3389172.

[3] The foreclosure case is currently pending in the Circuit Court of Charlotte County, Florida as case no. 2024-001881-CA

328512391v1

17. At the time of the loss, the Borrowers' Property was insured under a homeowner's policy issued by Citizens Property Insurance Corporation ("Citizens"), Policy No. 06821950-1, for the policy period March 10, 2022 through March 10, 2023. Based on the recorded mortgage (**Ex. B**), Home Point was listed as the mortgagee on the policy's declarations page.

18. The loss was reported to Citizens, which acknowledged the claim and assigned Claim No. 001-00-332712.

19. Prestige, acting as a public adjuster, assisted the Borrowers with their insurance claim to Citizens.

20. After inspecting the property and assessing the claim, Citizens determined there was coverage under the policy for damage to the Property.

21. As a result, Citizens issued the following checks:

   a. Check 530918, which was issued on October 24, 2022, to the Borrowers in the amount of $17,650.00;

   b. Check 563599, which was issued on December 1, 2022, to the Borrowers, Prestige, and Home Point in the amount of $101,185.29. [*See* Check 563599, **EXHIBIT E**];

   c. Check 573704, which was issued on December 19, 2022, to the Borrowers in the amount of $44,125.00; and

328512391v1

d. Check 598448, which was issued on March 1, 2023, to the Borrowers, Prestige, and Home Point in the amount of $71,784.71. [*See* Check 598448, **EXHIBIT F**].

22. Paragraph 5 of the mortgage governs the handling and disbursement of insurance proceeds paid on account of damage to the Property. (**EX. B**).

23. Checks 563599 and 598448 were issued jointly payable to Home Point, the Borrowers, and Prestige.

24. The Borrowers failed to comply with the contractual provisions governing insurance proceeds set forth in the mortgage and failed to remit the insurance proceeds to Home Point as required.

### INSURANCE CHECK 563599

25. Check 563599 was mailed to Prestige and then signed by it and the Borrowers. (**EX. E**). In addition, the check bears an indorsement[4] by "Shellpoint Mortgage Servicing LLC" ("Shellpoint").

26. The Borrowers and/or Prestige fraudulently indorsed the check on behalf of Shellpoint, which was not the correct payee because the check expressly listed Home Point as the additional payee.

---

[4] The endorsement contains a clear typographical error, as it states "Payes Without Recourse." (**Ex. E**).

328512391v1

27. To Rocket's knowledge and belief, Shellpoint was never assigned the mortgage and has never serviced the Loan nor had an interest in the mortgage.

28. Despite the absence of Home Point's signature on the check, the use of "and" between payees, and the notation that "all payees must endorse," Prestige's bank wrongfully honored the check and deposited the insurance proceeds into Prestige's account.

29. Prestige, after impermissibly withholding its 10% public adjusting fee, remitted the remaining insurance proceeds to the Borrowers.

30. Home Point, the mortgagee at the time the checks were issued, did not: (i) indorse the insurance check, (ii) authorize anyone to indorse the insurance check, (iii) authorize an indorsement on the check by Shellpoint, or (iv) receive any proceeds from the insurance check.

31. Rocket, the current Loan servicer and mortgagee, did not: (i) indorse the insurance check, (ii) authorize anyone to indorse the insurance check, (iii) authorize an indorsement on the check by Shellpoint; or (iv) receive any proceeds from the insurance check.

32. Prestige did not obtain permission from Home Point: (i) to sign or indorse the check on behalf of co-payee Home Point, (ii) to indorse the check on behalf of Shellpoint, (iii) to deposit the insurance check, (iv) to accept funds from

328512391v1

the insurance check, or (v) keep the insurance funds for itself or on behalf of anyone else.

33. The Borrowers did not obtain permission from Home Point: (i) to sign or indorse the check on behalf of co-payee Home Point, (ii) to indorse the check on behalf of Shellpoint, (iii) to deposit the insurance check, (iv) to accept funds from the insurance check, or (v) keep the insurance funds for themselves or on behalf of anyone else.

34. The Borrowers and Prestige knew that Home Point was the mortgagee listed on the policy's declarations page and that Home Point and/or its successors were the only entities authorized to endorse the insurance check.

35. The Borrowers and Prestige did not use any of the funds from the insurance check to repair the Property, nor did they remit any portion of the funds to Home Point or Rocket for application to the Borrowers' Loan.

36. Because the insurance funds were never transmitted to Home Point or Rocket, the Property remains vacant and in a state of disrepair, significantly diminishing its value and causing harm to Rocket.

**INSURANCE CHECK 598448**

37.     Check 598448 was mailed to Prestige and then signed by it and the Borrowers. (**Ex. F**). In addition, the check bears an indorsement[5] by another unrelated entity, Homecomings Financial LLC ("Homecomings").

38.     The Borrowers and/or Prestige fraudulently endorsed the check on behalf of Homecomings, which was not the correct payee because the check expressly listed Home Point as the additional payee.

39.     To Rocket's knowledge and belief, Homecomings was never assigned the mortgage and has never serviced the Loan. Also, Homecomings **ceased operations** on December 17, 2013.

40.     Despite the absence of Home Point's signature on the check, the use of "and" between payees, and the notation that "all payees must endorse," Prestige's bank wrongfully honored the check and deposited the insurance proceeds into Prestige's account.

41.     Prestige, after impermissibly withholding its 10% public adjusting fee, remitted the remaining insurance proceeds to the Borrowers.

42.     Home Point, the mortgagee at the time the checks were issued, did not: (i) indorse the insurance check, (ii) authorize anyone to indorse the insurance

---

[5] The endorsement contains a clear typographical error, as it states, "Payees without recourses." (**Ex. E**).

check, (iii) authorize an indorsement on the check by Homecomings, or (iv) receive any proceeds from the insurance check.

43. Rocket, the current servicer and mortgagee, did not: (i) indorse the insurance check, (ii) authorize anyone to indorse the insurance check, (iii) authorize an indorsement on the check by Homecomings, or (iv) receive any proceeds from the insurance check.

44. Prestige did not obtain permission from Home Point: (i) to sign or indorse the check on behalf of co-payee Home Point, (iii) to indorse the check on behalf of Homecomings, (iv) to deposit the insurance check, (v) to accept funds from the insurance check, or (vi) keep the insurance funds for itself or on behalf of anyone else.

45. The Borrowers did not obtain permission from Home Point: (i) to sign or indorse the check on behalf of co-payee Home Point, (iii) to indorse the check on behalf of Homecomings, (iv) to deposit the insurance check, (v) to accept funds from the insurance check, or (vi) keep the insurance funds for themselves or on behalf of anyone else.

46. The Borrowers and Prestige knew that Home Point was the mortgagee listed on the policy's declarations page and that Home Point and/or its successors were the only entities authorized to endorse the insurance check.

328512391v1

47. The Borrowers and Prestige did not use any of the funds from the insurance check to repair the Property, nor did they remit any portion of the funds to Home Point or Rocket for application to the Borrowers' Loan.

48. Because the insurance funds were never transmitted to Home Point or Rocket, the Property remains vacant and in a state of disrepair, significantly diminishing its value and causing harm to Rocket.

49. All conditions precedent to this action and the claims set forth below have been completed or have been otherwise waived.

## COUNT I: CONVERSION OF INSTRUMENT, FLA. STAT. § 673.4201 (ALL DEFENDANTS)

50. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

51. Following the loss to the Property, Citizens issued insurance checks 563599 and 598448 (the "Checks") payable jointly to Home Point, the Borrowers, and Prestige.

52. The Checks were mailed and/or delivered to co-payee, Prestige.

53. Prestige, as named co-payee, actually received possession of the Checks and exercised control over them, who then presented them for deposit with Prestige's bank.

54. Despite the fact that the Checks were payable jointly to Home Point, the Borrowers, and Prestige, and despite the requirement that all payees endorse

the Checks, Prestige's bank accepted, paid, and/or obtained payment of the Checks without Home Point's endorsement and for the benefit of persons not entitled to enforce the Checks or receive payment of the insurance proceeds.

55. The Borrowers and Prestige then distributed the funds from the Checks to themselves, even though they were not authorized to keep these funds.

56. The improper honoring of the fraudulently endorsed Checks that plainly omitted Home Point's signature, together with the Borrowers' and Prestige's retention of the funds, has permanently deprived Rocket of the ability to repair the Property or to apply the funds to the Loan balance.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against Defendants requiring they pay Rocket $172,970.00, and punitive damages to the extent permitted by Florida law, as well as any other relief this Court deems just and proper.

### COUNT II: COMMON LAW CONVERSION
### (ALL DEFENDANTS)

57. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

58. Despite the Checks missing an indorsement from Home Point, Prestige's bank honored the fraudulently indorsed Checks and wrongfully deposited the funds into Prestige's account.

328512391v1

59.    The Borrowers and Prestige accepted the proceeds from the Checks that they were not authorized to accept. Per the terms of the mortgage, Rocket has the right to these funds to evaluate the feasibility of repairs to the Property or apply the funds to the outstanding balance.

60.    The Borrowers' and Prestige's acceptance of the proceeds, and their failure to remit them to Rocket, has permanently or indefinitely deprived Rocket of its rights to the proceeds of the Checks.

61.    The deprivation is inconsistent with Rocket's interest in the proceeds under the mortgage.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against Defendants requiring they pay Rocket $172,970.00, and punitive damages to the extent permitted by Florida law, as well as any other relief this Court deems just and proper.

### COUNT III: BREACH OF CONTRACT
### (THE BORROWERS)

62.    Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

63.    Rocket and the Borrowers are parties to a mortgage contract. (**Ex. B**).

64.    Paragraph 5 of the mortgage explains the rights and obligations concerning insurance proceeds:

328512391v1

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction. . . . Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower."

(**Ex. B**).

65. Additionally, paragraph 5 maintains, "[f]ees or public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower." (**Ex. B**).

66. The Borrowers first breached the mortgage by receiving and accepting the proceeds from the Checks instead of sending the Checks to Home Point for proper application pursuant to the terms of the mortgage.

67. The Borrowers' second breach occurred when they allowed Prestige to retain a portion of the insurance proceeds that Home Point was entitled to apply to the Loan balance or disburse for the repair of the Property.

68. Rocket has been damaged because the Property, in which it holds an interest by virtue of the subject mortgage, sustained significant damage from

328512391v1

Hurricane Ian, and Rocket has been unable to use the insurance proceeds to repair the Property or apply them to the Loan balance.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against the Borrowers requiring them to pay Rocket $172,970.00 as well as any other relief this Court deems just and proper.

### COUNT IV: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (THE BORROWERS)

69. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

70. The Borrowers executed the note and mortgage encumbering the Property in favor of Rocket's predecessor, and Rocket is the current assignee of the subject mortgage. (**EX. C**).

71. The mortgage is a valid and enforceable contract between Rocket (as successor to the original mortgagee) and the Borrowers.

72. Under Florida law, there is implied in every contract, including the mortgage, a covenant of good faith and fair dealing requiring the parties to exercise their rights and perform their obligations in a manner that does not destroy or injure the other party's rights to receive the benefits of the contract.

73. The mortgage contains provisions, including but not limited to Paragraph 5 and the preservation-of-collateral provisions, that govern the procurement,

handling, and application of insurance proceeds in the event of damage to the Property, and that are intended to protect Rocket's security interest and its contractual right to have such proceeds applied to the repair of the Property and/or to the Loan balance.

74. Rocket and its predecessors substantially performed their obligations under the Loan and mortgage or were excused from further performance.

75. The Borrowers had an implied duty to exercise their rights under the mortgage, including their rights with respect to the insurance claim and insurance proceeds, in good faith and in a manner consistent with Rocket's reasonable contractual expectations and rights.

76. Instead, the Borrowers acted in bad faith by, among other things:

   a. Participating in or permitting the negotiation and deposit of the insurance checks without Home Point's endorsement, despite knowing that Home Point was the mortgagee and a named payee;

   b. Allowing Prestige to retain a portion of the insurance proceeds without Rocket's authorization and without regard to Rocket's rights under the mortgage;

   c. Failing to use the insurance proceeds to repair the Property; and

d. Failing to remit or cause to be remitted the insurance proceeds to Rocket for application to the Loan balance or disbursement for repairs, as contemplated by the mortgage.

77. The Borrowers' conduct did not merely involve a technical or isolated breach of an express provision, but instead was undertaken in bad faith and had the effect of frustrating and destroying Rocket's contractual right to receive the benefit of the bargain under the mortgage, including its right to have the insurance proceeds applied to protect and preserve its collateral and reduce the indebtedness.

78. The Borrowers' actions and omissions therefore constitute a breach of the implied covenant of good faith and fair dealing inherent in the mortgage.

79. As a direct and proximate result of the Borrowers' breach of the implied covenant of good faith and fair dealing, Rocket has been deprived of the insurance proceeds, has been unable to repair the Property or apply those proceeds to the Loan balance, and has suffered damages in an amount equal to the misappropriated insurance proceeds.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against the Borrowers requiring them to pay Rocket $172,970.00 as well as any other relief this Court deems just and proper.

328512391v1

## COUNT V: FRAUDULENT MISREPRESENTATION
### (ALL DEFENDANTS)

80. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

81. As part of the insurance claim arising from Hurricane Ian, Citizens issued the Checks payable jointly to Home Point, the Borrowers, and Prestige for damage to the Property.

82. In order to negotiate and obtain payment of the Checks, the Borrowers and/or Prestige executed endorsements on the Checks purporting to be endorsements of all named payees, including fraudulent endorsements on behalf of entities such as Shellpoint and/or Homecomings, and/or endorsements suggesting that proper authority existed to negotiate the Checks without Home Point's endorsement.

83. By executing these endorsements and presenting the Checks for payment, the Borrowers and Prestige represented that:

    a. All necessary and authorized endorsements had been obtained;

    b. Any endorsements made on behalf of additional payees or mortgagees were genuine and authorized; and

    c. The Borrowers and Prestige were entitled to receive and retain the insurance proceeds.

84. These representations were false. At the time the Borrowers and Prestige made and used the endorsements:

   a. Home Point was the mortgagee listed on the policy's declarations page;

   b. Shellpoint and/or Homecomings were not mortgagees on the Loan, had never serviced the Loan, and had no right to the insurance proceeds; and

   c. The Borrowers and Prestige were not authorized to endorse the Checks on behalf of Home Point or any other mortgagee, nor to receive and retain the proceeds to the exclusion of Rocket's and Home Point's interests.

85. The Borrowers and Prestige knew that these representations were false when they made them, or made them with reckless disregard for their truth or falsity.

86. The Borrowers and Prestige made these false representations with the intent that Prestige's bank would rely on them in honoring and paying the Checks, and with the further intent that Rocket and its predecessors would be deprived of their contractual and equitable rights to the insurance proceeds.

87. Prestige's bank and others did, in fact, rely on these false representations and endorsements by honoring and paying the Checks and disbursing the insurance proceeds to the Borrowers and Prestige, rather than requiring Home Point's endorsement or protecting Rocket's interest.

328512391v1

88. The reliance on these false representations was reasonable and foreseeable under the circumstances.

89. As a direct and proximate result of the Borrowers' and Prestige's fraudulent misrepresentations, the insurance proceeds were wrongfully disbursed and retained by the Borrowers and Prestige, and Rocket has been deprived of the ability to use those proceeds to repair the Property or to apply them to the Loan balance.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against Defendants requiring them to pay Rocket $172,970.00, and punitive damages to the extent permitted by Florida law, as well as any other relief this Court deems just and proper.

### COUNT VI: NEGLIGENCE
### (ALL DEFENDANTS)

90. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

91. Following the loss to the Property caused by Hurricane Ian, Citizens issued the Checks payable jointly to Home Point, the Borrowers, and Prestige.

92. The Checks identified multiple payees joined by the conjunction "and" and expressly stated that "all payees must endorse," or contained substantially similar language requiring the endorsement of all named payees.

328512391v1

93. Prestige, acting in the capacity of a public adjuster and co-payee on the Checks, owed a duty to exercise reasonable care in handling the insurance claim and proceeds, including a duty not to negotiate, deposit, or retain the Checks or proceeds in the absence of all required endorsements and without regard to the rights of the mortgagee.

94. As co-payees on the Checks and borrowers under the mortgage, the Borrowers likewise owed a duty to exercise reasonable care in handling the Checks and insurance proceeds, including a duty not to negotiate or deposit the Checks without obtaining all required endorsements and without regard to the lender's contractual rights in the proceeds.

95. Despite these duties, Prestige's bank accepted, processed, and honored the Checks without obtaining Home Point's endorsement, even though the Checks were payable jointly to Home Point, the Borrowers, and Prestige, were joined by the word "and," and expressly required all payees' endorsements.

96. Prestige breached its duty of reasonable care by, among other things, endorsing, presenting, and/or depositing the Checks without ensuring that all required payee endorsements, including Home Point's, had been obtained, and by retaining a portion of the proceeds without regard to the mortgagee's rights.

97. The Borrowers breached their duty of reasonable care by endorsing, presenting, and/or facilitating the negotiation and deposit of the Checks without obtaining Home Point's endorsement, and by permitting Prestige to retain a portion of the proceeds and using the remaining funds without applying them to repair the Property or to the Loan balance.

98. Collectively and individually, Defendants breached their duties by:

   a. Failing to ensure that all named payees endorsed the Checks;

   b. Paying, negotiating, or depositing the Checks on the basis of incomplete and/or unauthorized endorsements; and

   c. Disbursing, retaining, and/or using the insurance proceeds without protecting the rights of Home Point and its successor Rocket.

99. As a direct and proximate result of the negligence of Defendants, the insurance proceeds represented by the Checks were wrongfully paid to and retained by the Borrowers and Prestige, and Rocket has been deprived of the ability to use those proceeds to repair the Property or to apply them to the Loan balance.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against Defendants requiring them to pay Rocket $172,970.00, and for any other damages to the extent permitted by Florida law, as well as any other relief this Court deems just and proper.

328512391v1

## COUNT VII: TORTIOUS INTERFERENCE
### (PRESTIGE)

100. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

101. The Borrowers and Citizens were parties to an insurance policy. Home Point was a loss payee under the insurance policy.

102. The Borrowers, as well as Prestige, were aware that Home Point was the named additional loss payee when they filed the insurance claim. They were aware that the mortgage required the Borrowers to pay for public adjusting services separately from the insurance proceeds.

103. Prestige intentionally procured the Borrowers' breach of the mortgage by advising them to allow it to handle all aspects of the insurance proceeds, including coordinating the fraudulent indorsements of the Checks for Home Point.

104. Prestige intentionally procured the Borrowers' breach of the mortgage by either instructing them that they were allowed to keep the proceeds from the Checks or recklessly failing to ensure the Checks were delivered to Home Point.

105. Prestige's intentional and/or reckless conduct included fraudulently indorsing the Checks so the insurance proceeds could be deposited into its and the

328512391v1

Borrowers' bank accounts, and/or distributing funds amongst themselves, rather than in compliance with the mortgage.

106. There is no justification for Prestige's actions. The terms of the mortgage contract are clear and unambiguous.

107. Rocket has been damaged by the Borrowers' breach of the mortgage because the insurance proceeds were distributed without Rocket's authorization and have not been used either to repair the Property or to reduce the Loan balance.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against Prestige requiring it to pay Rocket $172,970.00, and punitive damages to the extent permitted by Florida law, as well as any other relief this Court deems just and proper.

## COUNT VIII: CIVIL CONSPIRACY
### (ALL DEFENDANTS)

108. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

109. The Borrowers and Prestige took a concerted action to accomplish an unlawful purpose and/or accomplish some unlawful purpose by unlawful means when they stole the insurance proceeds from the Checks and failed to remit the funds to Home Point.

110. As the current mortgagee, Rocket has been damaged as a result of the Borrowers and Prestige's actions.

328512391v1

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against Defendants requiring them to pay Rocket $172,970.00, and punitive damages to the extent permitted by Florida law, as well as any other relief this Court deems just and proper.

### COUNT IX: PRELIMINARY INJUNCTION
### (ALL DEFENDANTS)

111. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

112. Rocket seeks a preliminary injunction against the Borrowers and Prestige as an alternative form of relief. Specifically, Rocket requests a preliminary injunction that enjoins the Borrowers and Prestige from spending or distributing any funds received from Citizens without having the proceeds come first to Rocket so that it can apply the funds towards repair of the Property or to the balance of the Loan.

113. Rocket will suffer irreparable harm if the Borrowers and Prestige retain the funds and fail either to repair the Property or to apply the funds to the outstanding balance of the Loan.

114. Rocket has no adequate remedy at law as the Property's current state of disrepair lessens its security interest that cannot be remedied in the short term.

115. There is a substantial likelihood that Rocket will succeed on the merits and secure a judgment confirming that it was entitled to delivery of the proceeds

328512391v1

and had/has the right to distribute them as appropriate, including but not limited to repairing the property or application to the outstanding debt.

116. A temporary injunction will serve the public interest because it is sound public policy to encourage parties to comply with the terms of their contracts generally.

117. In this instance, there are numerous mortgages across Florida with the exact provisions at issue here. If delinquent mortgagors are permitted to retain insurance proceeds rather than deliver them to their lender, lenders will be forced to suffer two losses: (i) an inability to recover on the full amounts owed by liquidating the property; and (ii) substantially damaged property that cannot be reasonably rehabilitated or marketed which negatively impacts the marketability of the surrounding properties.

WHEREFORE, Rocket respectfully requests that this Court enter a judgment in favor of Rocket and against Defendants, enjoining them from distributing any proceeds received from Citizens to anyone other than Rocket, and recover the monies already distributed, as well as any other relief this Court deems just and proper.

### COUNT X: DECLARATORY JUDGMENT
#### (DEFENDANTS)

118. Rocket realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

328512391v1

119. There is a bona fide, actual present practical need for a declaration of the following facts:

    a. Home Point was entitled to the insurance proceeds paid out by Citizens;

    b. The Borrowers and Prestige fraudulently indorsed the Checks, with incorrect entities' signatures, on Home Point's behalf without authorization and distributed the funds in violation of the mortgage;

    c. As the current mortgagee, Rocket is entitled to payment of these funds for use in either repairing the Property or applying to the outstanding Loan balance.

120. This declaration concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

121. Rocket's contractual rights as the mortgagee and as the assign of the loss payee on the insurance contract are dependent on the facts set forth above.

122. Rocket, the Borrowers, and Prestige have an actual, present adverse and antagonistic interest in the subject matter, either in fact or law.

123. All necessary and relevant parties are properly before this Court by proper process.

124. The relief sought is not merely the giving of legal advice or the answer to questions propounded for curiosity.

328512391v1

WHEREFORE, Rocket respectfully requests that this Court issue a declaratory judgment, declaring that Rocket is entitled to direct receipt of all insurance proceeds arising from the loss suffered by the subject property in accordance with the terms of the mortgage and insurance contract.

## CONCLUSION

WHEREFORE, Plaintiff Rocket demands judgment against Defendants, the Borrowers and Prestige, jointly and severally, and requests an award of the following on all counts:

1. Actual damages in an amount to be proven at trial;

2. Punitive and exemplary damages as permitted by law;

3. Imposition of a temporary, preliminary, and permanent injunction enjoining Defendants, and each of them, from using, spending, and distributing any proceeds received from Citizens to anyone other than Rocket, and recover the monies already distributed;

4. A declaratory judgment that Rocket is entitled to direct receipt of all insurance proceeds arising from the loss suffered by the subject property in accordance with the terms of the mortgage and insurance contract

5. Attorneys' fees and costs of suit;

6. Pre-judgment and post-judgment interest as allowed by law; and

7. Such other and further relief as the Court deems just and proper.

328512391v1

Dated: June 10, 2026                    Respectfully Submitted,

                                        By: */s/ Anthony J. Calenzo*
                                        Anthony J. Calenzo, FL No. 1031903
                                        **Troutman Pepper Locke LLP**
                                        777 South Flagler Drive
                                        East Tower Suite 215
                                        West Palm Beach, FL 33401
                                        Primary Email:
                                        anthony.calenzo@troutman.com
                                        Secondary Email:
                                        christina.hill@troutman.com
                                        Phone: 470-832-5580
                                        *Counsel for Plaintiff Rocket Mortgage,*
                                        *LLC s/b/m Nationstar Mortgage LLC.*

328512391v1