UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROCKET MORTGAGE, LLC,

Plaintiff,

Case No. 2:26-cv-1955-KCD-NPM

v.

SUZANNE MAGILL, NORMAN MAGILL, PRESTIGE CLAIM CONSULTANTS CORP.,

Defendants.
_______________________________/

# ORDER

This case arises from a fraudulent scheme to misappropriate insurance proceeds. Defendant Prestige Claim Consultants Corp. has moved to dismiss three of the claims. (Doc. 18.)[1] Because the complaint (Doc. 1) is sufficiently pled, the motion to dismiss is **DENIED**.

## I. Background

In September 2022, Hurricane Ian damaged Defendants Suzanne and Norman Magill's home. At the time, Citizens Property Insurance Corporation was their insurer, and Home Point Financial Corporation was the mortgagee. The mortgage was then assigned to Plaintiff Rocket Mortgage in 2024.

The Magills reported the loss to Citizens, and Prestige assisted them with their claim. After determining there was coverage, Citizens issued four

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

checks. Two were made jointly payable to the Magills, Home Point, and Prestige. Check # 563599 for $101,185.29:


Acct # [redacted]8715 Check # :563599 Amount :101,185.29
Seq# [redacted]6204

Citizens Property Insurance Corporation
P.O. Box 10749
Tallahassee, FL 32302-2749

PLA
Claim Indemnity Disbursement

12/01/2022
DATE

0563599

63-8413
2670

PAY TO THE ORDER OF Prestige Claim Consultants and NORMAN MAGILL and HOME POINT FINANCIAL CORPORATION ISAOA ATIMA and SUZANNE MAGILL

Check Amount
$****101,185.29

One hundred one thousand one hundred eighty five Dollars and 29 cents

JPMorgan Chase Bank, N.A.
1450 Brickell Ave
Miami, FL 33131

ALL PAYEES MUST ENDORSE Two Signatures Required

Policy Number: PLA06821950
Claim Number: 001-00-332712

AUTHORIZED SIGNATURES

⑈[redacted]3599⑈ ⑆[redacted]4131⑆ [redacted]8715⑈




(Doc. 1-6.) And check # 598448 for $71,784.71:



Acct # [redacted]8715 Check # :598448 Amount :71,784.71

Seq# [redacted]8603

Citizens Property Insurance Corporation
P.O. Box 10749
Tallahassee, FL 32302-2749

PLA
Claim Indemnity Disbursement

03/01/2023
DATE

0598448

63-8413
2670

PAY TO THE ORDER OF NORMAN MAGILL and HOME POINT FINANCIAL CORPORATION ISAOA ATIMA and SUZANNE MAGILL and Prestige Claim Consultants

Check Amount
$*****71,784.71

Seventy one thousand seven hundred eighty four Dollars and 71 cents

JPMorgan Chase Bank, N.A.
1450 Brickell Ave
Miami, FL 33131

ALL PAYEES MUST ENDORSE

Two Signatures Required

Policy Number: PLA06821950

Claim Number: 001-00-332712

AUTHORIZED SIGNATURES

[redacted]8448⑈ ⑆[redacted]4131⑆ [redacted]8715⑈

ENDORSE HERE
Pay to the order of:
Payees without recourses to:
HOMECOMINGS FINANCIAL
Homecomings Financial LLC
CHECK HERE AFTER MOBILE OR REMOTE DEPOSIT DATE
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

PRESTIGE

(Doc. 1-7.)

Citizens mailed these checks to Prestige. The Magills and Prestige then signed the checks, but excluded Home Point. Instead, the checks bear an endorsement by "Shellpoint Mortgage Servicing LLC" and "Homecomings Financial LLC." Neither of these entities has serviced the mortgage, nor has either had an interest in it. In fact, Homecomings had not been in business

for nearly a decade when the endorsement was stamped on the check. Rocket claims that Prestige stamped those endorsements on the checks. Despite the absence of Home Point's signature on the check, the use of "and" between payees, and the notation that "all payees must endorse," Prestige's bank honored the check and deposited the insurance proceeds into Prestige's account.

The mortgage required that the insurance proceeds be remitted to Home Point and that public adjuster fees not be paid from the proceeds. (Doc. 1-3 ¶ 5.) Still, Prestige withheld a 10% public adjusting fee and remitted the remaining insurance proceeds to the Magills. The funds were not used to repair the property, and no portion was given to Home Point or Rocket. A year later, the home went into foreclosure. The Magills now live in Ohio and have defaulted in this case. (Doc. 22.)

Rocket brings eight claims against Prestige, but only three are disputed here: fraudulent misrepresentation, tortious interference, and civil conspiracy.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

Prestige first lodges a procedural objection. It claims the complaint is an impermissible "shotgun pleading" because it sweeps the Magills and Prestige into the same factual allegations without distinguishing between the two.

To be sure, the Eleventh Circuit has condemned shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-33 (11th Cir.

2015). The doctrine is designed to prevent complaints that are so vague or that a defendant cannot discern what they are being sued for. *See, e.g.*, *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019). Still, defendants cannot simply shout "shotgun pleading" to make a legible complaint vanish. *See Aria Dental Grp., LLC v. Farmers Ins. Exch.*, 528 F. Supp. 3d 1359, 1363 (M.D. Ga. 2021).

The complaint gives Prestige exactly the notice it is entitled to. While the factual narrative refers to Defendants collectively in certain places—which makes sense given they are both alleged to have jointly signed and presented the fraudulent endorsements on the same checks—the pleading is far from unintelligible. *See 1-800-411-I.P. Holdings, LLC v. Ga. Inj. Ctrs., LLC*, 71 F. Supp. 3d 1325, 1330 (S.D. Fla. 2014). Rocket tells a single, easy-to-follow story.

More importantly, when it comes to the actual claims, Rocket does what the rules require. It separately delineates Prestige's distinct conduct, as only Prestige is alleged to have received, possessed, and controlled the checks as the named co-payee and presented them to its own bank. (Doc. 1 ¶¶ 25, 28, 37, 40.) And only Prestige is alleged to have withheld a 10% fee before remitting the remainder to the Magills. (*Id.* ¶¶ 29, 41.) Prestige knows what checks are at issue, what the alleged conduct is, and what role it allegedly played. Because Prestige has fair and adequate notice of the claims brought

against it, the shotgun pleading argument fails. *See, e.g.*, *Green v. Miami-Dade Cnty.*, No. 08-20016-CIV, 2008 WL 11333589, at *1 (S.D. Fla. Oct. 16, 2008).

**A. Fraudulent Misrepresentation (Count V)**

Turning to the merits, Rocket alleges that the Magills and Prestige fraudulently endorsed the checks on behalf of the entities Shellpoint and Homecomings so that the bank would accept them. Prestige argues that Rocket has not pled this count with the required particularity.

Federal Rule 9(b)'s specificity requirements apply to a fraudulent misrepresentation claim. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025). In practice, that means the complaint must provide the who, what, when, where, and how of the alleged deception. *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 775 (Bankr. S.D. Fla. 2013). Though Rule 9(b) requires more particularity than the normal pleading standard, its application "must not abrogate the concept of notice pleading." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Courts should "hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024). "A

defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003 (Fla. Dist. Ct. App. 2020).

The complaint satisfies Rule 9(b). As for who: "the Borrowers and/or Prestige" executed the fraudulent endorsements and presented the checks for payment. (Doc. 1 ¶¶ 26, 38, 82.) Prestige is further identified as the co-payee that received and presented the checks (*id.* ¶¶ 25, 37), withheld a 10% public-adjusting fee before remitting the balance to the Magills (*id.* ¶¶ 29, 41), and separately failed to obtain Home Point's permission to sign, endorse, deposit, or accept funds from the checks (*id.* ¶¶ 32, 44). Prestige complains that the complaint does not identify who at Prestige stamped the check, but a plaintiff need not plead facts "peculiarly within" the defendant's own knowledge with pinpoint specificity before discovery. *Otto Candies*, 137 F.4th at 1206. Which individual within Prestige stamped the name "Shellpoint" or "Homecomings" is a fact known only from Prestige's own records—not one Rocket could plead more specifically now.

As for what, the complaint identifies the documents, false statements, and reasons each was false. The misrepresentation is tied to specific documents attached to the complaint: the endorsements on the back of checks 563599 and 598448. (Doc. 1 ¶¶ 25, 37; Docs. 1-6, 1-7.) The complaint alleges that Prestige endorsed check 563599 (issued December 1, 2022, in the

amount of $101,185.29) in the name of "Shellpoint Mortgage Servicing LLC," an entity never assigned the mortgage or servicing the loan (Doc. 1 ¶¶ 21(b), 25-27), and endorsed check 598448 (issued March 1, 2023, in the amount of $71,784.71) in the name of "Homecomings Financial LLC," an entity with no interest in the loan that had ceased operations nearly a decade before the check issued (*id.* ¶¶ 21(d), 37-39). By executing these indorsements and presenting the checks, the Magills and Prestige represented that "[a]ll necessary and authorized endorsements had been obtained," that any indorsements "were genuine and authorized," and that they "were entitled to receive and retain the insurance proceeds." (*Id.* ¶ 83(a)-(c).) Each representation was false because neither Shellpoint nor Homecomings was the mortgagee entitled to endorse, and neither the Magills nor Prestige had authority to endorse on Home Point's behalf. (*Id.* ¶ 84(a)-(c).)

As for when, the complaint ties each misrepresentation to a window of time: the fraudulent indorsement and presentment of each check occurred between its mailing to Prestige and its deposit into Prestige's account. (Doc. 1 ¶¶ 25, 37.)

As for where and how, the fraud mechanism is detailed in the complaint. The fraudulent endorsements were presented to, and honored by, "Prestige's bank," which "wrongfully honored the check[s] and deposited the insurance proceeds into Prestige's account." (Doc. 1 ¶¶ 28, 40.) Prestige

controlled and directed the presentment of the checks to induce its bank to pay funds it should not have paid. Although the checks were payable jointly to Home Point, the Magills, and Prestige, the Magills and Prestige endorsed each check with the fabricated signature of an unrelated, non-payee entity in place of Home Point's genuine indorsement, then presented the fraudulently completed instrument for payment. (*Id.* ¶¶ 26, 28, 38, 40, 82-83.) Prestige's bank was induced to honor and pay the checks and disburse the proceeds "rather than requiring Home Point's endorsement or protecting Rocket's interest." (*Id.* ¶ 87.) Prestige's "conditions of [ ] mind," including knowledge, "may be alleged generally." Fed. R. Civ. P. 9(b).

Because the complaint passes Rule 9(b) specificity requirements, Count V survives.

**B. Tortious Interference With Contracts (Count VII)**

Count VII alleges that Prestige tortiously interfered with the Magill's mortgage contract by advising them to allow Prestige to handle the insurance proceeds, including coordinating the fraudulent endorsements. (Doc. 1 ¶¶ 103-05.) In Florida, a claim for tortious interference with a contractual relationship requires: "(1) the existence of a business relationship … (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan*

*Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). The complaint satisfies all these elements.

First, as to the existence of a contractual relationship, the complaint alleges that Rocket, as successor and assignee, holds all rights under the mortgage with regard to the insurance proceeds. (Doc. 1 ¶ 22.) Second, the complaint alleges that Prestige, as well as the Magills, "were aware that Home Point was the named additional loss payee when they filed the insurance claim" and "were aware that the mortgage required the Borrowers to pay for public adjusting services separately from the insurance proceeds." (*Id.* ¶¶ 34, 46, 102.) "Prestige intentionally procured the Borrowers' breach of the mortgage by advising them to allow it to handle all aspects of the insurance proceeds, including coordinating the fraudulent indorsements of the Checks for Home Point." (*Id.* ¶ 103.) The complaint further alleges that "Prestige's intentional and/or reckless conduct included fraudulently indorsing the Checks so the insurance proceeds could be deposited into its and the Borrowers' bank accounts, and/or distributing funds amongst themselves, rather than in compliance with the mortgage." (*Id.* ¶ 105.) Finally, Rocket alleges that it has been damaged. (*Id.* ¶ 107.)

Attacking the third element, Prestige argues that its interference was justified because it is a licensed public adjuster, a named co-payee on the insurance checks, and contractually entitled to a percentage of the proceeds

as its fee. (Doc. 18 at 10-11.) But justification is an affirmative defense that cannot be decided here. *See T.V. Azteca S.A. de C.V. v. Telemundo Commc'n Grp., Inc.*, No. 06-civ-22048, 2007 WL 9701166, at *2 (S.D. Fla. Feb. 21, 2007). Justification is necessarily fact-intensive, requiring "an examination of the defendant's conduct, its motive, and the interests it sought to advance." *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015).

Prestige next argues that the complaint fails to plausibly allege intentional conduct because paragraph 104 pleads in the alternative and includes the phrase "recklessly failing." (Doc. 18 at 11-12.) No problem there. The Federal Rules allow alternative pleading. *See* Fed. R. Civ. P. 8(d)(2). Count VII thus survives.

**C. Civil Conspiracy (Count VIII)**

In Florida, to state a claim for civil conspiracy, a plaintiff must allege: "(1) an agreement between two or more parties, (2) to do an unlawful act or to do lawful act by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed in furtherance of it." *Gilison*, 303 So. 3d at 1004. Prestige argues that the complaint fails to plead any specific agreement or unlawful act beyond a formulaic recitation of the elements, noting that the count is three paragraphs long. (Doc. 1 ¶¶ 108-09; Doc. 18 at 12-13.)

The first paragraph of Count VIII incorporates the complaint's factual section. (Doc. 1 ¶ 108.) Those paragraphs allege that an agreement was formed between Prestige and the Magills. An agreement supporting a civil conspiracy claim "occurs when there is an express or implied agreement of two or more persons to engage in a criminal or unlawful act." *Gilison*, 303 So. 3d at 1004. Such an agreement "may be inferred from circumstantial evidence," *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. Dist. Ct. App. 1987). Prestige is not alleged merely to have known of or associated with a scheme. It is alleged to have actively coordinated the fraudulent endorsements, advised the Magills on handling the proceeds, and split the misappropriated funds with them. (Doc. 1 ¶¶ 29, 41, 103-105.) These allegations plausibly allege at least an implied agreement to steal insurance proceeds, sufficient to survive dismissal. *See Gilison*, 303 So. 3d at 1004 ("A conspirator only needs to know of the scheme and assist in it in some way to be held responsible for all the acts of his conspirators."). Finally, the remaining elements are readily satisfied by the conduct outlined above.

## IV. Conclusion

In sum, Rocket's claims are pled with enough plausibility and particularity to proceed to discovery. Prestige's Motion to Dismiss (Doc. 18) is therefore **DENIED**.

**ORDERED** in Fort Myers, Florida on September 21, 2026.

Kyle C. Dudek
United States District Judge